IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

CECIL MCGEE,

    DEBTOR.

CECIL MCGEE,

    PLAINTIFF,

vs.

GREEN TREE SERVICING, LLC,

    DEFENDANT.

BK 06-70486-CMS-13

AP 07-70014-CMS

## MEMORANDUM OF DECISION

This matter came before the court on debtor/plaintiff Cecil McGee's complaint asking the court to determine that the automatic stay of 11 U.S.C. § 362(a) was either still in effect; and/or, to reimpose the stay against creditor/defendant Green Tree Servicing, LLC's foreclosure attempt. The court has reviewed the facts in the context of applicable law, and holds that judgment must be entered **IN FAVOR** of the plaintiff; and **AGAINST** the defendant.

### FINDING OF FACTS

Cecil McGee's (McGee's) complaint (AP 07-70014, Doc. 1) requested the court to enter an order determining whether or not the automatic stay had lifted in his pending bankruptcy case (BK 06-70486-CMS-13); and/or, if the stay had lifted, to reimpose the stay to prevent Green Tree Servicing, LLC's (Green Tree's) foreclosure proceeding against his mobile home.

After a March 2, 2007 hearing, the court entered a preliminary injunction against the imminent foreclosure on the home, the debtor's residence. By agreement of the parties, the court also set trial on the merits for March 8, 2007. Both parties then appeared at the hearing, where they were offered an opportunity to present witness testimony, and/or to offer evidentiary exhibits.

1

A review of the record showed that McGee filed his Chapter 13 case on May 1, 2006, scheduling a 1996 Fleetwood mobile home as an asset in his list of personal property. He also claimed a homestead exemption in the mobile home. (BK Doc. 1) McGee's schedules and plan indicated that he owed Green Tree a prepetition arrearage of $1,692.11, and stated a current mortgage payment of $402.88 per month due the creditor. His plan proposed to cure the arrearage through plan distribution; and for the debtor to pay the current mortgage payments, beginning in June of 2006, directly to Green Tree. The debtor listed benefits from the federal Social Security Administration as his income source.

On May 4, 2006, Green Tree filed Proof of Claim 2 as a secured claim for prepetition arrearage of $1,659.39 for the months of February through May, 2006. The face of the claim indicated that the current mortgage payment, including interest and insurance, was $500.58 per month. The attachments to Claim 2 showed that the contract term was 20 years, with the first payment due May 3, 1996; and the last due in 2016.

Green Tree amended its arrearage claim July 12, 2006 to increase the amount to $2,159.97 for arrearage for February through June, 2006. No objections were filed to the confirmation of McGee's plan; and McGee filed no objection to Green Tree's claim. McGee's plan was confirmed July 26, 2006. (BK Doc. 21)

October 10, 2006, Green Tree filed a motion for relief from the automatic stay. (BK Doc. 24) The motion alleged that a post-petition arrearage had accrued for August through October of 2006 totaling $914.25 in monthly payments and $186.07 in force-placed insurance. The attached affidavit signed by Green Tree representative Lanny Culbertson stated that the current mortgage payments were $437.89, and were due on the 4th of each month. Culbertson's affidavit also stated that the fair market value of the mobile home at that point was $49,344.00; and that the current payoff was $43,041.29.

McGee and Green Tree settled the dispute by an agreed order conditionally denying relief from stay, but including a "drop-dead" clause against future default on the direct payments. The court directed Green Tree's attorney to prepare the order. (BK Doc. 36, court notes on the November

2

2, 2006 hearing) The order subsequently executed by the court was entered November 13, 2006. (BK Doc. 38)

Under the November 13, 2006 order, Green Tree was allowed to file an additional claim for $1,577.32 in post-petition arrearage and attorney fees through October of 2006. Under the court's settlement order, McGee was also required to resume "making regular monthly mortgage payments (including principal, interest and insurance) as provided for in the Contract beginning with November, 2006 payment direct to Green Tree." (BK Doc. 38) However, the order itself did not recite a specific amount required for McGee's regular monthly payments.

Paragraph 3 of the order provided that if McGee failed to pay the November, 2006 payment of principal, interest and insurance within the month of November, then the stay would lift; and that the "drop dead" clause would continue for all future payments. The order further provided that effective with the December, 2006 payment, if the debtor defaulted on payment of "principal and interest as described in the preceding paragraphs of this Order by failing to make a regular monthly mortgage payment on the date it comes due per the terms of the Contract..." then Green Tree would be authorized to give notice to the debtor and debtor's attorney of the default. At that point, the order gave the debtor a 20-day grace period from the date of the notice to cure the default. Failure to cure the default within the 20 days would result in the stay lifting by operation of law, without further order of the court.

On November 24, 2006, McGee paid $482.00 to Green Tree. McGee later testified that this was the amount he had paid for his mortgage payment in the past. Although the amount was allegedly incorrect, Green Tree accepted and retained the payment. The debtor testified that his daughter actually handled payments on his mobile home for him, but the daughter did not testify. No payments were made to Green Tree by the December 4, 2006 due date, or by the following January 4, 2007 due date.

January 12, 2007, Green Tree's attorney wrote McGee, with a copy to the debtor's attorney, and Green Tree representative Culbertson, declaring that he was in default for failure to make his "full" November, 2006 through January, 2007 payments and was past due $1,019.74 (including

3

principal, interest, and insurance). (Debtor's Exhibit C to the complaint) The letter advised McGee that he had until February 1, 2007 to pay Green Tree the $1,019.74 deficiency. A document attached to the January 12, 2007 letter stated that principal and interest payments for November, 2006 through January, 2007 should have been $500.58 per month.

Then on February 2, 2007, Green Tree's attorney again wrote McGee's attorney to advise him that Green Tree treated the stay as having lifted for the debtor's failure to pay pursuant to the January 12, 2007, letter. (Green Tree Exhibit 2) A copy of this letter was also sent to Green Tree's representative Culbertson. The creditor then initiated the foreclosure process.

At the March 8, 2007 trial on this AP, the debtor testified in his own behalf. Green Tree offered only the documentary evidence reflected in the record.

McGee testified that he did receive the default letter, and that, on February 5, 2007, he sent Green Tree $1,000.00. He also testified that on February 19, 2007, he sent the creditor another $501.00. Green Tree did not return either payment, he said. The debtor testified that he did not make his payment until February 5, 2007 because he was waiting for his Social Security check.

When questioned about why he was also unable to make his prepetition payments, McGee stated that "things came up". In answer to a question about the other missed post-petition payments, he testified that there had been "bumps in the road", but that he could resume his monthly mortgage payments in future. The debtor offered no other explanation for the default.

McGee filed this adversary proceeding on February 28, 2007, asking the court to halt the foreclosure temporarily until the dispute could be tried on the merits. His complaint asked the court to determine that he had not defaulted under the terms of the court's conditional stay order; or, in the alternative, to reimpose the stay based on the equities. In the future, McGee agreed that he would pay Green Tree the correct amount each month to retain possession of the home.

The court tried AP 07-70014 on March 8, 2007, and took the dispute under submission for a decision following that hearing. The McGee case is one of three adversary proceedings which Chapter 13 debtors filed against Green Tree as defendant, asking essentially for the same relief from this court. (See also AP 07-70015 and AP 07-70016) All were tried in March 8, 2007 hearings, but

4

all are factually distinct, and have required differing findings. The court's order which temporarily halted the foreclosure proceedings in all three, has remained in place pending final resolution.

## CONCLUSIONS OF LAW

This court has jurisdiction of McGee's Chapter 13 case under 28 U.S.C. § 1334(a). The court has jurisdiction of this contested matter, a core proceeding hinging on interpretation of the court's own orders and records, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to this Bankruptcy Court by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

### I.

### The stay did lift under the terms of the court's November 13, 2006 order.

The parties stipulated that they entered into the November 13, 2006 settlement order conditionally denying the relief from stay. They further stipulated that the debtor was in default for the December, 2006 and January, 2007 payments; and that he had received Green Tree's January 12, 2007, letter allowing him 20 days to pay $1,019.74. Both also agreed that the additional payments were not made within the 20 days of notice required under the "drop-dead" clause.

Consequently, the court finds that McGee did default under the terms of the court's November 13, 2006 order, and that the stay lifted by operation of law as of February 2, 2007, as required by the order.

### II.

### Even though the stay has lifted, do the facts require that it be reimposed for equitable reasons? Based on this record, the equities balance in favor of reviving the stay conditionally.

11 U.S.C. § 105(a) states the following:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This section is a statutory institutionalization of the equitable powers bankruptcy courts/district courts sitting in bankruptcy, exercised in former days under common law. See United States v. Swift

& Co., et al., 286 U.S. 106, 114-16 (1932).

The Eleventh Circuit Court of Appeals, with particular emphasis in the 1990s, has supported a broad application of such powers, so long as the remedies are "necessary or appropriate" under Section 105(a), and do not conflict with the statutory provisions in the Bankruptcy Code itself.

> Sovereign immunity aside (for governmental entities under Section 106), §105 uses the broad term "any" which encompasses all forms of orders including those that award monetary relief. The term "any" should be given this broad construction under the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect."... Therefore, the plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or punitive, as long as it is "necessary or appropriate to carry out provisions of" the Bankruptcy Code. ...

See Jove Engineering, Inc. v. I.R.S. (In re Jove Engineering, Inc.), 92 F.3d 1539, 1554 (11th Cir., 1996).

See also Hardy v. United States (In re Hardy), 97 F.3d 1384, 1389-90 (11th Cir. 1996); and Morgan v. United States (In re Morgan), 182 F.3d 775, 789 (11th Cir. 1999).

It is undisputed McGee defaulted under the terms of the November 13, 2006 order. He failed to cure his arrearage of $1,019.74 by February 1, 2007. The stay lifted by operation of law on February 2, 2007. He paid Green Tree $1,000.00 on February 5, 2007, four days late on his grace period; followed by another $501.00 payment on February 19, 2007. Green Tree retained both payments although it was initiating foreclosure. The court must now decide under these specific facts, whether equities balance in favor of reimposing the stay.

Any equitable analysis must weigh the benefits of the debtor's retention of his home in a successful reorganization (a major policy goal under the Bankruptcy Code), against Green Tree's right to the most adequate protection possible of its in rem rights in the home (another major policy goal of the Code).

Justice Cardozo stated long ago that:

> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent. ... A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. ...

Swift Company, 286 U.S. at 114.

However, conditions must be such that continued enforcement of the prior injunction is inequitable.

The Supreme Court in Swift was dealing with a consent order arising after years of complex antitrust litigation. The Court stated that:

> Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

Swift, 286 U.S. at 119.

Fed. R. Civ. P. 60(b)(5) (applied in bankruptcy by Rule 9024) also provides in pertinent part that a Bankruptcy Court may relieve a party from a final judgment if ".. [I]t is no longer equitable that the judgment should have prospective application. ..." Bankruptcy courts, as courts of equity, can reimpose the automatic stay in appropriate circumstances. See Westinghouse Credit Corp. v. Prime, Inc., (In re Prime, Inc.) 26 B.R. 556, 559 (Bankr. W.D. Mo. 1983).

However, as the Supreme Court pointed out in Swift, while the entering court has the power to modify, it must determine whether "enough has been shown to justify its exercise." Swift, 286 U.S. at 115. The court, in deciding whether or not to reimpose the stay, must balance the interests of the debtor and the creditor, never ignoring the rights of secured creditors to be adequately protected. Prime, Inc., 26 B.R. at 559.

Unlike the other two adversary proceedings tried on March 8, 2007, McGee is Green Tree's customer under the terms of the original contract. In fact, McGee's contract, as attached to Green Tree's Claim 2, reflects a 20-year term that still has nine years to run.

Additionally, unlike the debtors in the other two adversary proceedings, McGee has considerable equity in his mobile home. Green Tree's representative, in his affidavit to the motion for relief from the automatic stay, valued the mobile home at $49,344.00 against a current mortgage payoff of $43,041.29. McGee's approximate $6,300.00 of equity in his mobile home, gives him a stake in keeping the home that comprises part of the Green Tree security and adequate protection.

Unfortunately, McGee is much like the proverbial "day-late-and -a-dollar-short" debtor. He was actually four days late and $19.74 short of his February 1, 2007 deadline when he sent Green Tree his $1000.00 payment on February 5, 2007. Then he made his February payment on February 19, 2007 for $501.00, paying 42 cents more than the monthly payment of $500.58. Nevertheless, he

7

may have owed a late fee since the payment came 15 days after his 4th of the month due date.

McGee's attorney asserted that Green Tree's acceptance of the late payments constituted a waiver of the foreclosure rights asserted in the February 2, 2007 letter. Waiver is an equitable concept that allows courts to deem that parties have modified a prior written contract by their acceptance of subsequent behavior which is not compliance with the written terms. Bankruptcy courts have applied waiver, or declined to apply waiver, depending on the individual facts and governing non-bankruptcy law in various jurisdictions.

For example, the Bankruptcy Court in In re Parks, 193 B.R. 361 (Bankr. N.D. Ala. 1995) held that a mortgagee's acceptance of payments post-foreclosure waived forfeiture and the foreclosure of the mortgage would be set aside (as cited with approval in the later Hardin v. Kirkland Enterprises, Inc., 939 So. 2d 40 (Ala. Civ. App. 2006). However, the court in In re Mangano, 253 B.R. 339 (Bankr. D. N.J. 2000) disagreed with Parks and found that the mortgagee's acceptance of debtor's payment post-petition was not a waiver of its rights under a prepetition foreclosure under New Jersey law.

In Alabama, the Supreme Court defined waiver long ago in Barry v. Welch, 248 Ala. 167, 168; 26 So. 2d 872, 873 (Ala. 1946) by holding that:

> ... The forfeiture declarable under the strict terms of the contract may be waived by continued recognition and receipt of part payments, after ground of forfeiture (Gatewood v. Hughes, supra), and relief from the forfeiture under such conditions may be awarded in equity if it would appear to be just and right.

The court finds that, considering all the facts of the McGee situation, including the debtor's equity in the mobile home and Green Tree's retention of his post-default payments, the equities balance in favor of reimposing the stay pursuant to Section 105(a), conditioned on McGee's timely remission to Green Tree of any principal, interest, insurance or late fees due since the court's November 13, 2006 order.

The court will direct Green Tree to compute this total and, as soon as possible, notify McGee and his attorney of the specific amount of any remaining default. Further, upon this notice, McGee shall pay any deficiency amount directly to Green Tree within 21 days of the notice.

8

## CONCLUSION

To the extent stated above, judgment must be entered **IN FAVOR OF THE PLAINTIFF**, and **AGAINST THE DEFENDANT** in AP 07-70014.

A separate order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this April 17, 2007.

/s/ C. Michael Stilson  
C. Michael Stilson  
United States Bankruptcy Judge